UNITED STATES v. MESCALL (four cases).

(Circuit Court, E. D. New York.   May 7, 1908.)

Nos. 3–7 (753, 764, 765, 774).

1. Customs Duties (§ 125*)—Criminal Law—"Entry."
    In Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), relating to the crime of making or attempting to make entry by means of a fraudulent practice, etc., the word "entry" does not refer alone to the act of filing at the custom house the written paper known as an "entry," but embraces the entire transaction of passing the goods through the custom house, among the various steps of which would be the official returns of customs weighers.
    [Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 125.*]
    For other definitions, see Words and Phrases, vol. 3, p. 2408.]

2. Customs Duties (§ 128*)—Illegal Entry—"Other Person."
    Under Customs Administrative Act June 10, 1890, c. 407, § 9, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), relating to the crime of making an illegal entry by the owner, importer, consignee, agent, "or other person," the term "other person" does not embrace all individuals who may be fraudulently concerned in the making of an entry, and would not include a customs weigher, who had merely made false reports of weights in furtherance of an importer's attempt to make an illegal entry.
    [Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 128.*]

On Demurrer to Indictments for Illegal Entry.

William J. Youngs, U. S. Atty.

Eugene F. O'Connor, Jr. (Leo Oppenheimer, of counsel), for defendant.

CHATFIELD, District Judge.   Each of these indictments is brought under section 9, c. 407, Act June 10, 1890, 26 Stat. 135 (U. S. Comp. St. 1901, p. 1895), which forbids the making or attempting to make an entry of imported merchandise by means of any false or fraudulent practice or appliance, false statement, or false paper, etc.   Each indictment consists of more than one count, based upon different provisions of the same statute, and all are alike in the fundamental idea

---

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that they charge the defendant, who is stated to be a weigher in the customs service of the United States, with having made and having attempted to make entry of certain cheese by means of false statements and papers and practices. The basis of the charge is an accusation that, after the importer had entered his goods in the custom house, the defendant made a false return of the weights to the collector of customs, for the purpose of having the liquidation of the entry made upon the basis of that false weight, and thus causing the amount of duty exacted to be less than that which should be paid upon the correct weight of the importation.

Section 9 of the customs administrative act is a modified re-enactment of certain provisions which have long been embodied in the Revised Statutes. The original provision was contained in Act March 2, 1799, c. 22, § 66, 1 Stat. 677. In 1863, chapter 76, becoming a law upon March 3d of that year (Act March 3, 1863, c. 76, 12 Stat. 737), was enacted and furnished a more or less comprehensive statute with relation to the importation of merchandise and the duties of importers and of officials of the government with relation thereto. Section 1 of this law, in connection with various other provisions, contained substantially the language of the first portion of section 9 of the Act of 1890. Section 3 of that act contained substantially similar provisions to those now embodied in section 5445 of the Revised Statutes (U. S. Comp. St. 1901, p. 3678), and section 4 provisions substantially similar to those of section 5444 of the Revised Statutes (page 3677). Upon the compilation of the Revised Statutes of the United States in 1874 the various provisions of the act of 1863 were carried into the revision; and in 1890 that portion of section 1 of the law of 1863 above referred to was put into a separate section, a paragraph added imposing a criminal penalty upon the person making the false entry, and a phrase inserted in the civil portion of the section requiring the fraud to be one "by means whereof the United States shall be deprived of lawful duties."

An inspection of these various statutes and of the accompanying provisions of the law of 1863 would justify the interpretation that the word "entry," in the act of June 10, 1890, and in the preceding acts, referred to the filing of the written paper called the "entry" with the collector of the port, and that any false statement, document, or appliance used in making or attempting to make the entry must accompany the entry at the time of its filing, or be used as a part of the transaction prior to the receipt of the paper entry by the collector. In fact, the law of 1863, immediately after the words referred to, provides for the performance of certain acts by the collector immediately upon the making of such entry, and that duty shall not be finally liquidated until certain papers have been received, "provided that such liquidation shall not be delayed longer than eighteen months from the time of making such entry." The words "such entry," as has been said, occur frequently throughout the act, and in each place are capable of the above interpretation. Such an interpretation would make it impossible to sustain this indictment, which charges the examiner or weigher with making a false "entry," by furnishing a false statement

of weight for the purpose of liquidation, subsequent to the filing and acceptance by the collector of the paper called the "entry" and the completion of that step in the transaction.

But these provisions, now contained in section 9, have been differently interpreted in this circuit, and while the decision, perhaps, was not necessary to a determination of the particular case, it would seem to be the law of this circuit that the word "entry," in section 9 of the customs administrative act, refers to the entire transaction of passing the goods through the custom house, and hence includes the various steps, among which is the return of a statement of the weights with respect to goods subject to a specific duty upon weight. The question was first considered by Judge Blatchford in the case of United States v. Baker, 5 Ben. 251, Fed. Cas. No. 14,500. In charging a jury under almost precisely similar circumstances, Judge Blatchford said:

"The word 'entry' in the first section of the act of 1863 * * * means not only the entry specified in the preceding part of that section, but any entry, so called, in custom house language. * * * There is an entry for warehouse, such as was the original entry in this case. * * * There is a withdrawal entry, as there was in this case. * * * For the purposes of the clause which I have read to you, inflicting this forfeiture, the word 'entry' means the entire transaction by which the importer obtains the entrance of his goods into the body of the merchandise of the United States."

Judge Blatchford goes on to say that "any false practice, or any false appliance, * * *" previous to the liquidation and the payment of duties, may work a forfeiture and be within the provisions now contained in section 9. Judge Blatchford then charged that any bribing of a weigher, with the intent to procure a false return, would come within the provisions of this section.

This seems to be the only positive interpretation of these particular words. In the case of United States v. Legg, 105 Fed. 930, 45 C. C. A. 134, the Circuit Court of Appeals for this circuit, referring to the word "entry" in section 2785 of the Revised Statutes (U. S. Comp. St. 1901, p. 1867), said:

" 'The term "entry" in the acts of Congress is used in two senses. In many of the acts it refers to the bill of entry—the paper or declaration which the merchant or importer hands in the first instance to the entry clerk. In other statutes it is used to denote, not a document, but a transaction, a series of acts which are necessary to the end to be accomplished, viz., the entering of the goods.' Hoffman, J., in U. S. v. Cargo of Sugar, 3 Sawy. 46, Fed. Cas. No. 14,722. That case was a prosecution under a statute providing a penalty 'if any owner or consignee of goods shall knowingly make or attempt to make an entry thereof by means of any false invoice or false certificate, * * * or of any other false or fraudulent practice or appliance whatsoever.' Manifestly, the word 'entry,' in such statute, referred to the entire transaction of passing the goods through the custom house. To the same effect is U. S. v. Baker, 5 Ben. 251, Fed. Cas. No. 14,500."

It may be noted that Judge Hoffman, in his charge in the Sugar Case, supra, interpreted the word "entry" as covering a series of acts, but did not extend that series of acts beyond the completion of the filing of the paper commonly known as an "entry." But, however this may be, the approval of the Circuit Court of Appeals and the language used by Judge Blatchford make it necessary to hold that the

transaction prohibited by section 9 of the law of 1890 may occur at any time in connection with the entering of goods into the United States through the custom house. Under this interpretation of the section, the act of the defendant in this case would be held to be one upon which forfeiture could be based, upon which the value of the goods, if they could not be forfeited, might be collected from the person making the entry, and upon which a prosecution of that person might be had.

The defendant, however, has demurred to these indictments upon the additional ground that section 9 applies to no person except one who can be considered as within the class of "owners, importers, consignees, agents," etc. It is argued that no "assistant weigher" in the customs service can be brought within this class, without construing the words "other person" to mean "any person whatever." This is an unnecessary attempt at straining the construction of the statute. An assistant weigher, or any individual who came within the scope of the provisions of the section, in the sense of making or attempting to make an entry, would certainly be within the class of "owners, importers, consignees, agents, and other persons" referred to in the statute.

Nor is it necessary to consider the further objection, which is urged, that no actual deprivation of duty to the United States is shown. The decision of this court, in the recent case of U. S. v. 210 Half Cases of Cheese and 59 Cases of Figs, 163 Fed. 369, may be assumed to set forth the allegations which would be considered necessary to show a deprivation of duty upon which forfeiture or prosecution could be had. But it is apparent from the allegations of the indictment that the defendant is not in fact any of the persons within the contemplation of section 9, with relation to these particular importations, and cannot be considered either an "owner, importer, consignee, agent, or other person."

The defendant, Mescall, was not making or attempting to make an entry of these goods. According to the charge he was, contrary to his duty, rendering assistance to the importer, who was the "person" making the entry. The statute does not provide for the case of all individuals who may assist or have a fraudulent part in the making of an entry (in either sense of the word) by some other person. In fact, in the recent case of U. S. v. One Silk Rug (decided by the Circuit Court of Appeals in the Third Circuit) T. D. 28,779, 158 Fed. 974, section 9 has been held to apply to no one but the person who files the entry with the collector of the port; and, however that decision may be viewed, it is authority for the present proposition. If the statute had in that case been held broad enough to include all persons actually making the entry, either through the filing of the entry by themselves or by some one at their direction, nevertheless a weigher, whose connection with the transaction was merely such as that of the defendant Mescall in this case, would not be one of the parties chargeable, or referred to by the words "such person" in the criminal portion of this statute.

The case of U. S. v. 1,150½ Pounds of Celluloid, 82 Fed. 627, 27 C. C. A. 231, while differing in some respects from U. S. v. One Silk

Rug, supra, reviews a number of cases with reference to the forfeiture of goods under these sections, and is additional authority for the proposition that the defendant, Mescall, is not included in the scope of the prohibitions of section 9.

The demurrers will be sustained.